UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-14448-CIV-MAYNARD

ANISSA CLARKE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner,
Social Security Administration,

    Defendant.
_____/

<u>**ORDER ON THE PLAINTIFF'S COMPLAINT (DE 1) AND ON THE DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 25)**</u>

**THIS CAUSE** comes before this Court upon the above pleadings. Having reviewed the full record and having held a hearing thereon on October 9, 2018, this Court finds as follows:

### BACKGROUND

1. The Plaintiff applied for disability insurance benefits under Title II of the Social Security Act on April 14, 2015. The application was denied at the first two levels of administrative review. On January 24, 2017, following a hearing, an Administrative Law Judge ("ALJ") rendered a decision finding the Plaintiff not disabled under the terms of the Social Security Act. The Appeals Council denied the Request for Review on October 31, 2017, thereby leaving the ALJ's decision final and subject to judicial review.

2. The Plaintiff's work history includes retail, clerical, and customer service jobs. Her taxed earnings report shows income from 1999 to 2011. The Plaintiff has a two year college education.

3. The medical record begins in March 2011. That month Dr. Kirvin of Palm Beach Sports Medicine filled out a work release form for her then employer. At the time she held the job of conference customer service representative. At issue was a reported knee injury and knee pain complaint. (The Administrative Record contains no treatment notes related to this knee condition.) At first Dr. Kirvin imposed a wide-variety of work activity restrictions. However in the work release report from July 2011, Dr. Kirvin had just one restriction: to stay at her work station without need to get up frequently.

4. In March 2012 the Plaintiff went to the hospital. She was shopping at Pet Smart when she says she experienced a fainting spell and momentary loss of consciousness. She experienced no other fainting-related symptoms such as fatigue or lightheadedness before the fainting spell. She did feel nauseous, but that was because she had not eaten yet that day. All testing done at the hospital was normal. Syncope was diagnosed. The Plaintiff was 29 years old.

5. She did not seek medical care again until September 2014 when she saw Dr. Bogle at Physicians Immediate Care for left eye dermatitis. In January 2015 she saw Dr. Borchelt at the Heart and Family Health Institute of Port St. Lucie for refills of Metaformin (for pre-diabetes) and Aldactone (a blood pressure medication).

6. She returned to the Physicians Immediate Care practice on March 25, 2015. This treatment note contains the first complaint of back pain of record. The Plaintiff complained of a two week long flare-up of low back pain. The pain also radiated down into her legs. She attributed the pain to a herniated lumbar disc from a car accident in 2012 (for which the Administrative Record contains no treatment notes). Unspecified backache was diagnosed. Prednisone, Flexeril, and Tylenol #3 (codeine) were prescribed, and therapeutic injections were given. The Plaintiff was 32 years old at the time.

7. The earnings record suggests that the Plaintiff had returned to work at some point in 2014. She was working doing customer service for an online pharmacy. She claims March 30, 2015 as her date last worked as well as her alleged disability onset date. In her application and at the hearing she attributed that cessation of employment to her pain conditions. She was having difficulty tolerating the drive to work even though it

was just a short distance away. The employer declined to make requested work-place accommodations. The employer declined to reduce her hours to part-time without a doctor's note. The employer declined to give her a reclined seating option even with a doctor's note. (The contemporaneous treatment record shows no such requests or problems, this Court observes.)

8.  In April 2015 the Plaintiff returned to the Heart and Family Health Institute of Port St. Lucie, this time for low back pain. She complained of a two week flare-up caused by frequent walking trips from her work station to her car to take medication, to eat snacks, and to make phone calls, none of which her employer permitted inside. Treatment to-date had not eased her low back pain. An MRI was taken of her lumbar spine. It was overall unremarkable except for a small protrusion at the L5—S1 disc site. Dr. Wadhwa treated her. He added Soma and Neurontin to her medications.

9.  Also in April 2015 the Plaintiff applied for disability benefits. She claimed disability due to severe migraines, neck pain, arthritic shoulder pain, low back pain that radiates down her legs, and knee pain. She also claimed pre-diabetes.

10. Dr. Wadhwa referred the Plaintiff to pain management, and in May 2015 the Plaintiff began seeing Dr. Swartz. She

complained of low back pain and pain that radiates down the full length of both of her legs. She reported additional widespread areas of pain in her neck, knees, and shoulder. The physical examination was overall normal. Dr. Swartz observed only a slow and deliberate gait as well as tenderness in her cervical and lumbar spine areas. Guarding reduced the range of lumbar motion. Dr. Swartz added a prescription for an opioid patch (Butrans) for pain relief.

11. The Plaintiff reported no pain relief despite her medications and injections at the follow-up pain-management appointments with Dr. Swartz in June and August 2015. At that August 2015 appointment the Plaintiff complained that the inability to sit for long hindered employment. At that August appointment Dr. Swartz observed the Plaintiff to be "very dramatic in her presentation [with] lots of oohing and aahing". He diagnosed lumbago (with lumbar disc displacement without myeolopathy) and neck pain. He added Celebrex and Elavil to her medications.

12. The Plaintiff saw Dr. Wadhwa in September 2015. The Plaintiff again complained of ongoing, unrelieved low back pain with lower extremity pain radiation and neuropathy. Dr. Wadhwa added Cymbalta (for the neuropathy) and Lunesta (for sleep) to her medications.

13. The Plaintiff testified at the hearing held November 2016. She repeated her claim of diverse, severe pain complaints that cause a pronounced degree of impairment. She can sit no longer than one hour (and she prefers to sit in a reclined position with her feet elevated). She can stand no longer than ten minutes and can walk only a short distance. She can lift no more than ten pounds. She has difficulty reaching high overhead. Pain hinders sleep, causing her to sleep late into the morning. She does very light, and minimal household activities.

14. At Step Two of the disability analysis, the ALJ found the Plaintiff to have the severe impairment of a small lumbar disc protrusion. The ALJ found none of the other claimed medical conditions to rise to the level of a "severe impairment" as Step Two defines that term. The ALJ did not find the Plaintiff's medical conditions to be wholly disabling. The ALJ found the Plaintiff still capable of a reduced range of light work despite them.

15. The ALJ explained why she assessed the Plaintiff's Residual Functional Capacity ("RFC") for a reduced range of light work rather than fully disabled. The ALJ noted the relatively spartan treatment history and the conservative nature of that treatment. The ALJ noted the unremarkable objective medical evidence such as the overall normal physical examination

findings and the one relatively non-severe MRI finding. The ALJ noted the absence of any supporting work-related opinion statement from a treating source (contemporaneous to her date last worked and alleged disability onset date). The record evidence simply does not corroborate the breadth and degree of the Plaintiff's pain allegations, the ALJ reasoned.

16. However the ALJ did not reject the Plaintiff's pain allegations completely. The ALJ found the evidence---as limited as it is---to justify reduction of the Plaintiff's RFC to reflect the presence of the "small herniated disc with some tenderness, spasm and joint pain." In further support of the RFC assessment the ALJ noted the RFC rating that the agency medical advisor gave at Exhibit 3A to whom the ALJ gave great weight.

17. Next the ALJ had to decide whether the assessed RFC permits the Plaintiff to return to her past work. Based on the testimony of the Vocational Expert ("VE") who also testified at the administrative hearing and the <u>Dictionary of Occupational Titles</u>, the ALJ found the Plaintiff able to perform her past jobs as order clerk, meeting planner, administrative clerk, and receptionist. The ALJ therefore concluded that the Plaintiff is not disabled.

**DISCUSSION**

18. Judicial review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the proper legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997). Supporting evidence need not be preponderant to be substantial so long as it amounts to more than a scintilla; in other words, it is such relevant evidence that a reasonable person might accept as sufficient and adequate to support the conclusion reached. See id. at 1440. If the decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court re-weigh the evidence nor substitute its judgment for that of the ALJ. See Wolfe v. Chater, 86 F.3d 1072 (11th Cir. 1996). See also, Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). While the Commissioner's factual findings enjoy such deference, a court is free to review the Commissioner's legal analysis and conclusions de novo. See Ingram v. Comm'r, 496 F.3d 1253, 1260 (11th Cir. 2007). See generally, Jordan v. Comm'r, 470 Fed.Appx. 766, 767-68 (11th Cir. 2012).

19. At the hearing that this Court held on the pleadings, the Plaintiff repeated her claim of very severe pain conditions and resulting pronounced impairment. She said that the typical

workplace cannot accommodate her need to sit in a reclined position with her feet elevated. Her pain hinders her ability to sit upright. She claimed a long history of arthritis which physical therapy worsened. She described herself as a fall risk. She asserted overall limited mobility. As for pain-relieving treatment, she said that she has built up a tolerance to pain medication after many years of use since a remote shoulder injury. For that reason pain medication no longer is effective at relieving her pain. This Court construes her argument to be that the ALJ wrongly rejected her disability claim and wrongly found her capable of a reduced range of light work.

20. This Court begins by noting the governing standards. Relevant here is the standard that guides the determination of what the Plaintiff's RFC is. Her Residual Functional Capacity is an assessment of her work ability---the most she can do---despite the impairments that her medical conditions cause. It is drawn from the whole evidentiary record: subjective allegations, objective medical evidence, medical opinion evidence, and non-medical evidence. See Lewis, 125 F.3d at 1440 and Phillips, 357 F.3d at 1238 (applying 20 C.F.R. § 404.1545). See also, SSR 96-8p. In compliance therewith the ALJ undertook the required comprehensive analysis of the record evidence when she assessed the Plaintiff's RFC.

21. As noted above one point of consideration is the Plaintiff's subjective allegations. For a decision rendered before March 27, 2017 (as was the case here), the standard that governed the evaluation of the Plaintiff's subjective pain impairment allegations was 20 C.F.R. § 404.1529 and SSR 96—7p. Those two regulations list out the various factors by which the severity of a pain condition and its impairing effect are measured. The ALJ considered those factors in her analysis.

22. One of the more important factors is objective medical evidence such as physical examination observations (of how an underlying medical condition manifests itself in an observable way) and radiographs or other clinically determinable medical defects underlying the pain complaints. The ALJ correctly found the objective medical evidence to lend no support to the Plaintiff's pain-based disability allegations. Physical examination findings showed few pain manifestations and the only underlying orthopedic defect---one small protrusion of a lumbar disc---is relatively non-severe. The record simply contains no objective medical evidence of an underlying medical condition that reasonably could cause the very severe and wide-ranging pain impairments that the Plaintiff alleges. The ALJ also correctly analyzed the other relevant factors such as the nature and extent of treatment and non-medical factors.

23. That is not to say that the ALJ completely rejected the Plaintiff's pain allegations. The ALJ acknowledged the presence of pain conditions and the presence of pain-related impairment on her ability to work. The RFC that the ALJ assessed reflects significant accommodation.

24. As noted above the treatment history of record is spartan and shows both the limited pursuit of treatment and relatively conservative treatment measures. Nor does the medical evidence of record confirm many aspects of her disability claims and allegations. There is no medical evidence of her earlier car accidents nor treatment notes that corroborate her claimed pursuit of workplace accommodations. This Court notes that ultimately it is the Plaintiff's burden to prove her disability claim, see Ingram, 496 F.3d at 1269 (citing Doughty v. Apfel, 245 F.3d 1274 (11th Cir. 2001)), and that burden of proof carries with it the obligation to proffer into the record all relevant medical evidence that might support her claim.

## CONCLUSION

25. It is not for this Court upon judicial review to re-weigh the evidence or reach findings of fact anew; such is the responsibility of the ALJ as the fact-finder in this case. In other words Social Security law does not permit this Court to make its own decision about whether to grant or deny the

Plaintiff's disability application. Social Security law instead limits the scope of consideration to reviewing the ALJ's decision on appeal. This Court's review is limited to ensuring that the ALJ's findings of fact are supported by competent, substantial evidence and that the decision comports with the governing law and regulations. Social Security law thereby gives a certain degree of deference to the ALJ's decision. Having reviewed the parties' arguments and having independently and carefully reviewed the whole record, this Court finds the decision to have such support, with no grounds warranting reversal or remand.

It is therefore,

**ORDERED AND ADJUDGED** that the Plaintiff's Complaint (DE 1) is **DENIED**. In affirming the ALJ's decision, the Defendant's Motion for Summary Judgment (DE 25) therefore is **GRANTED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 18th day of October, 2018.

*Shaniek Maynard*
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

CC: Jessica E. Elliott, AUSA (via CM/ECF NEF)

Anissa Clarke, pro se
5212 NW Edgarton Terrace
Port St. Lucie, FL 34983